Present:  Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ.,
and Carrico and Lacy, S.JJ.

TC MIDATLANTIC DEVELOPMENT, INC.

v.  Record No. 091271                 OPINION BY SENIOR JUSTICE
                                         ELIZABETH B. LACY
COMMONWEALTH OF VIRGINIA,                  JUNE 10, 2010
DEPARTMENT OF GENERAL SERVICES,
ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Margaret P. Spencer, Judge

     In this construction contract dispute, the dispositive
issue is whether the trial court erred in sustaining a demurrer
and dismissing an amended complaint on the ground that
compliance with conditions precedent was not adequately pled.

                          BACKGROUND

     In May of 2004, TC MidAtlantic Development, Inc. (TCM)
entered into a Comprehensive Agreement with the Commonwealth of
Virginia, Department of General Services (DGS) to perform work
on the Washington and Finance Buildings (Phase I) and a proposal
by TCM to perform work on the 8th Street Complex (Phase II).
Phase II had not received legislative or gubernatorial approval
or authorization but the Comprehensive Agreement provided that,
as part of the review and report prepared to secure the
requisite governmental approvals, TCM would undertake certain
planning activities with regard to Phase II at no cost to DGS.
The design-build contracts for Phase I were incorporated in and
attached to the Comprehensive Agreement.

Several disputes arose between TCM and DGS in connection with the project.  The parties exchanged a number of communications and engaged in mediation in December, 2006; however, the claims were not resolved.  DGS sent a letter to TCM dated February 16, 2007, terminating the Comprehensive Agreement as it related to Phase I, the Finance and Washington buildings, and informing TCM it was not going forward with Phase II, the 8th Street Complex.  The letter also stated that TCM was "entitled as of the date of this letter to file any formal claims on these projects pursuant to the provisions of Section 47 of the General Terms and Conditions of the Comprehensive Agreement."  Section 47 provided in relevant part:

> Contractual claims . . . shall be submitted, in writing, no later than sixty (60) days after final payment; however, written notice of the Contractor's intention to file such claim must be given at the time of the occurrence or beginning of the Work upon which the claim is based.  The filing of a timely notice is a prerequisite to recovery under this Section. . . .  All claims shall be submitted along with all practically available supporting evidence and documentation.

> No written decision denying a claim or addressing issues related to the claim, if rendered prior to final payment, shall be considered a denial pursuant to this Section unless the written decision makes express reference to this Section and is signed by the Agency head or his designee.  The Contractor may not institute legal action prior to receipt of the Owner's final written decision on the claim unless the Owner fails to render such a decision within ninety (90) days of submission of the claim or within ninety (90) days of final payment, whichever is later.

TCM instituted this litigation in April 2007 by filing a complaint asserting seven counts based on the termination of Phases I and II of the Comprehensive Agreement and its subparts. DGS filed a plea in bar and motion to dismiss asserting inter alia that TCM's complaint failed to comply with the requirements of Section 47 of the General Conditions of the Comprehensive Agreement and therefore did not state a cause of action.[1] Without ruling on the plea in bar and motion to dismiss, the trial court allowed TCM to file an amended complaint. TCM filed an amended complaint in September 2007 in which it asserted five counts and attached a number of documents purporting to demonstrate that it had complied with the requirements of Section 47. DGS responded by filing a demurrer, plea in bar, and motion to dismiss, asserting that the amended complaint and its exhibits still "fail[ed] to allege submission of a timely claim in compliance with Section 47."

Following briefing and argument, the trial court entered an order dated December 17, 2007, sustaining DGS' demurrer and dismissing the amended complaint with prejudice and without leave to amend. In its order, the trial court concluded that the February 16, 2007 letter from DGS began the 60-day period for filing formal claims under Section 47. The trial court went

---

[1] DGS also filed a counterclaim which was subsequently non-suited.

3

on to hold that TCM did "not submit any documentation or make reference to a formal claim submitted within the sixty-day time period." TCM subsequently filed motions for reconsideration and to amend the dismissal order, both of which the trial court denied.[2] We awarded TCM an appeal.

DISCUSSION

On appeal TCM raises three assignments of error asserting that the trial court erred in granting DGS' demurrer and denying TCM's motion for reconsideration, and abused its discretion by refusing to allow TCM to amend its amended complaint. We will consider these issues in order.

I.

In its first assignment of error TCM complains that the trial court erred in sustaining DGS' demurrer and denying the motion for reconsideration with regard to Counts I through IV of the amended complaint. This error, according to TCM, occurred because the trial court resolved the merits of the case, misinterpreted Section 47, did not properly evaluate TCM's pleadings, and erred in holding that "TCM failed to submit a timely claim and complaint."

---

[2] TCM's first appeal was dismissed without prejudice because DGS' counterclaim had not been resolved and, therefore, the December 17, 2007 order was not a final, appealable judgment. On remand, TCM filed its motion to amend which was denied and DGS non-suited its counterclaim. TCM then filed a timely appeal.

4

TCM and DGS agree that Section 47 required that (1) TCM submit to DGS written notice of its intent to file a claim at the time of the occurrence or beginning of the work upon which the claim is based; (2) TCM file in writing its contractual claim with documentation within 60 days of the final payment; (3) DGS render a final decision within 90 days of receiving the written contractual claim; and (4) legal action be initiated within six months of the final decision or, if no final decision was rendered, within six months of the date of the submission of the claim or the date of final payment, whichever is later.

TCM's argument that the trial court misinterpreted the requirements of Section 47 is based on the following language in the final order:

> The Court has reviewed Plaintiff's supporting exhibits and finds that Plaintiff failed to submit a timely claim to Defendant for a final decision.  Plaintiff did not file suit in this Court until April 24, 2007, more than sixty days after Defendant's February 16, 2007 termination letter.  Plaintiff failed to file any other form of final complaint with Defendant.

TCM argues that in stating that TCM filed this litigation more than 60 days after the February 16th letter and did not file any other "final complaint," the trial court "confused" filing a claim with filing a complaint in circuit court.  We disagree.

Read in context, the final two sentences quoted above mean that the lawsuit filed in this case could not be considered as

compliance with the period in which a claim had to be filed because it was filed more than 60 days after the February 16th letter and no other document was filed within the 60-day period. In referring to other documents which could have been filed, the trial court was not using the word "complaint" as a word of art referring to the title given a document used to initiate litigation. See Rule 3:2(a).

Next, TCM complains that the trial court erred because it decided the matter on the merits. TCM bases this argument on the statement in the final order that "[t]he Court finds the evidence of compliance with Section 47 of the General Terms and Conditions to be insufficient." Again we disagree.

TCM attached a number of documents to the amended complaint. The court reviewed these documents to see if they supplied the necessary written claims required to be submitted to DGS within the requisite 60-day period. Referring to "evidence" and "sufficiency" did not change the nature of the court's holding that TCM did "not submit any documentation or make reference to a formal claim submitted within the sixty-day time period."

TCM's final argument in this assignment of error is that the trial court erred because TCM adequately pled a cause of action and, as a result, the demurrer should have been denied.

6

The standard of review applicable here is well established. A demurrer admits the truth of all material facts properly pleaded, including facts expressly alleged, fairly viewed as impliedly alleged, and those which can be fairly and justly inferred from the facts expressly alleged. In determining whether the pleading states a cause of action, the court may also examine any exhibits accompanying the pleading. CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). In this case, because compliance with Section 47 is a condition precedent to instituting legal action, allegations of compliance with that section are necessary to state a cause of action. See Flippo v. F&L Land Co., 241 Va. 15, 22, 400 S.E.2d 156, 160 (1991); Lerner v. Gudelsky Co., 230 Va. 124, 132-33, 334 S.E.2d 579, 584 (1985). Whether a cause of action is sufficiently pled is a legal issue which we review de novo. Eagle Harbor L.L.C. v. Isle of Wight County, 271 Va. 603, 611, 628 S.E.2d 298, 302 (2006).

TCM asserts that it sufficiently pled compliance with Section 47 with regard to the filing of a formal complaint within the 60-day period in paragraphs 18 and 19 of the amended complaint. Those paragraphs stated:

> 18. TCM has made written demands upon DGS for the payment of all sums properly due and payable to TCM, and DGS has failed or refused to timely or fully pay all such sums to TCM.

7

19. TCM has made written demands upon DGS for the performance of DGS' obligations under the terms of the Contract Documents for the Project and pursuant to applicable law. However, DGS has failed or refused to timely or fully perform its contractual and legal obligations under the Contract Documents for the Project and pursuant to applicable law.

Neither paragraph 18 nor 19 expressly state that TCM submitted a claim within the 60-day period or in a timely manner. The phrase "pursuant to applicable law" refers to the obligations of DGS, not the submission of TCM's claims. TCM, in oral argument before this court, posited that because the pleadings refer to "timely" performance by DGS, the pleading should be read as impliedly alleging that TCM's written demands against DGS were timely. However, reading the express allegation about DGS' obligation to act "timely" to be an implied averment with reference to the timeliness of TCM's written demands, as TCM suggests, asks the court to indulge an inference not fairly supported by the pleadings. The pleadings reflect a choice by the drafter to use the word "timely" in some places but not in others, and that choice precludes interpolation of that word by inference where it has not been used.

TCM goes on to argue that even if paragraphs 18 and 19 alone do not sufficiently address the requirements of Section 47, the letters it submitted to DGS on March 23, 2007 contained

its final claims on the Washington and Finance building projects and thus the trial court erred in sustaining the demurrer and in denying the motion for reconsideration.[3]  We reject this argument because, as discussed below, the March 23 letters, first presented to the trial court in TCM's motion for reconsideration, were not referenced in the amended pleading nor made part of that pleading.

TCM unambiguously stated in paragraph 23 of the amended complaint that the DGS' termination letter of February 16th "constituted DGS' <u>final written decision</u> on TCM's Project claims."  (Emphasis added.)  This position was reiterated in TCM's trial memorandum submitted in opposition to DGS' demurrer and in argument at the hearing on the demurrer.  The trial court disagreed with TCM's characterization of the February 16th letter as DGS' final decision, holding in its dismissal order that the letter initiated the 60-day period which TCM had to file its claim with supporting documentation.  Because no allegations in the amended complaint or documentation attached to that complaint addressed claims filed within that period, the trial court concluded that TCM failed to state a cause of action

---

[3] TCM also claimed that its allegation in paragraph 20 of the amended complaint, that "TCM and DGS mutually agreed to submit their collective Project claims to mediation . . . on December 18, 2006," was sufficient to satisfy the pleading requirement of timely submitting claims to DGS.  However, under this allegation, the claims were submitted before the February 16th letter was even sent.

because it did not allege the requisite conditions precedent to filing litigation under Section 47.

After the trial court entered its order dismissing the amended complaint, TCM filed its motion for reconsideration. In its motion, TCM asserted that, assuming that the 60-day period for filing claims began to run from the February 16th letter, it filed letters with DGS dated March 23, 2007 with attached schedules showing amounts owed for items in its claims, thus meeting the pleading deficiency found by the trial court. TCM appended the March 23 letters to its motion for reconsideration; however, TCM did not ask for leave to amend its amended complaint to add the letters or to amend the complaint to allege that the February 16th letter was something other than a final decision by DGS. Consequently, the amended complaint continued to recite that the February 16th letter was DGS' final decision. Assuming the March 23 letters constituted the type of claims required for compliance with Section 47, the letters were submitted after DGS' final decision according to the allegations in the amended complaint.

In considering a demurrer, the trial court was limited to review of the amended complaint and any attachments to that complaint. Fun v. Virginia Military Institute, 245 Va. 249, 252, 253, 427 S.E.2d 181, 183 (1993). The March 23 letters were not associated with the amended complaint in any way and the

amended complaint continued to state that the February 16th letter was DGS' final decision on TCM's claims. Under these circumstances, we cannot say the trial court erred in granting DGS' demurrer and in denying TCM's motion for reconsideration with regard to Counts I through IV of the amended complaint.[4]

II.

In its second assignment of error, TCM asserts that the trial court erred in sustaining the demurrer as to Count V of the amended motion for judgment. Count V asserted breach of contract and wrongful termination of Phase II, the 8th Street Complex. According to TCM, Phase II was not subject to Section 47 and, therefore, the trial court erred in applying the provisions of that section to Count V of the amended complaint.

Section 25 of the Comprehensive Agreement, entitled "Resolutions of Disputes, Claims and Other Matters," stated in relevant part:

Except as specifically set forth in the General Conditions, all disputes, claims and other matters in question between the parties shall be resolved as follows:

(a) Disputes, claims and other matters in question between the parties involving matters covered by the Design-Build Contract shall be governed by Section 47 of the General Conditions.

---

[4] TCM has not appealed the trial court's conclusion regarding the nature of the February 16th letter. At oral argument in this Court, TCM asserted that the characterization of the letter as DGS' final decision in paragraph 20 of the amended complaint was an error.

11

(b) All other disputes, claims and other matters in question between the parties arising under this Agreement shall be governed as follows:

> (i)  The parties shall attempt in good faith to settle the dispute by mediation before resorting to litigation as provided below.
> . . .

> (ii)  . . . Mediation shall be a condition precedent to the institution of a lawsuit pursuant to this agreement. . . .

Phase II was not the subject of a design-build contract. Therefore, this provision, as TCM asserts, does not require TCM to comply with the provisions of Section 47 of the General Conditions for claims arising from Phase II.[5]

Nevertheless, DGS argues that even if Phase II claims were not subject to Section 47 of the General Conditions, Section 326.0 of the Construction and Professional Services Manual (CPSM) and Code §§ 2.2-814 and 2.2-815 required TCM "to submit a written claim for a decision and exhaust the mandatory administrative procedures" for Phase II claims.

---

[5] DGS asserts that we should not consider this argument here because TCM did not raise it before the trial court. The record does not support DGS' argument. TCM asserted that its claims related to Phase II were not subject to Section 47 requirements in its request for suspension or vacation of the trial court's December 17, 2007 order, its memorandum in support of its motion to reconsider, and its motion to amend the December 17, 2007 order.

Regardless of the merits of DGS' position, Code § 8.01-273 provides that in considering a demurrer, "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court."  See Klein v. National Toddle House Corp., 210 Va. 641, 643, 172 S.E.2d 782, 783 (1970).  In its demurrer and memorandum and argument in support of its demurrer, DGS only asserted the failure to allege compliance with the provisions of Section 47 of the General Conditions.  Failure to comply with provisions of the CPSM or other statutes was not a ground specifically stated in the demurrer and therefore cannot be considered as a basis for granting the demurrer here.

Accordingly, because under the terms of Section 25 of the Comprehensive Agreement, Phase II was not subject to the provisions of Section 47 of the General Conditions, the trial court erred in dismissing Count V of the amended complaint for failure to allege compliance with that section.

### III.

In its final assignment of error, TCM asserts that the trial court "abused its discretion by refusing to allow TCM to amend its Amended Complaint."  The record contains no request by TCM for leave to amend its amended complaint or a proposed second amended complaint.  TCM argues, nevertheless, that it was "presumptively denied" the opportunity to seek amendment by the

recitation in the December 17, 2007 order that the amended complaint was dismissed "without leave to amend."

We reject TCM's view that the language in the final order precluded TCM from subsequently seeking leave to amend. Motions for reconsideration challenging a holding or finding in a trial court judgment are commonplace. The December 17 order did not preclude TCM from seeking to amend its amended complaint and therefore we find no merit in TCM's third assignment of error.

CONCLUSION

In summary, for the reasons stated, we find no error in that portion of the trial court's judgment dismissing Counts I – IV of the amended complaint and we will affirm that portion of the judgment. We will reverse that portion of the judgment dismissing Count V of the amended complaint and remand the matter to the trial court for further proceedings on that Count.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

14